# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 4278 | **DATE** | 6/23/2000 |
| **CASE TITLE** | KEMPER PRIME INDUSTRIAL PARTNERS, vs. MONTGOMERY WATSON AMERICAS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Third-party defendants' motion to dismiss the third-party plaintiff's complaint [66-1] is denied. Enter memorandum order and opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 26 2000 | 87 |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 6/23/2000 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| CG | courtroom deputy's initials | CG mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

Form (06/97)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEMPER PRIME INDUSTRIAL PARTNERS, ET AL., ) ) ) Plaintiffs/Counter-Defendants, ) ) v. ) ) MONTGOMERY WATSON AMERICAS, INC. ) ) Defendant/Counter-Plaintiffs. ) _____) ) MONTGOMERY WATSON AMERICAS, INC. ) ) Third-Party Plaintiff, ) ) v. ) ) THE PRIME ENTITIES, INC., ET AL. ) ) Third-Party Defendants. ) | No. 97 CV 4278<br><br>Judge Guzman |

## MEMORANDUM ORDER AND OPINION

Pending is third-party defendants' motion to dismiss the third-party plaintiff's complaint. For the reasons stated below, the motion is hereby denied.

## BACKGROUND FACTS

Plaintiffs, Kemper Prime Industrial Partners, et al. ("Kemper/Prime"), filed suit against defendant, Montgomery Watson Americas, Inc. ("MWA"), as successor to Warzyn Inc., alleging negligent misrepresentation in connection with a 1990 environmental assessment MWA performed for Kemper/Prime of industrial property located at 13535 South Torrence Avenue in Chicago ("the Site"). (Am. Compl. ¶ 32).

Kemper/Prime asserts that MWA failed to exercise the level of skill and care ordinarily exercised by members of the environmental engineering profession. (*Id.* ¶ 29). Specifically, Kemper/Prime claims that MWA negligently misrepresented that Sanborn maps for the Site, which provide information regarding historical land use, building construction and operations information, were unavailable. (*Id.* ¶ 22). Kemper/Prime maintains that the Sanborn maps were available and if located, would have disclosed the existence of 26 underground storage tanks ("USTs") at the Site. (*Id.*). Further, Kemper/Prime contends that MWA negligently failed to perform the Subsurface Investigation or alternatively that MWA failed to properly interpret the test results, and as a result, MWA did not give an account of the full extent of the pollution of the Site. (*Id.* ¶ 25). Kemper/Prime avers that MWA's failure to obtain the Sanborn maps and disclose the full existence of pollutants amounted to incomplete and inaccurate information which was detrimentally relied upon in deciding to purchase the Site. (*Id.* ¶ 29).

On June 28, 1990, Kemper/Prime purchased the Site from U.S. MetalSource Corp. (*Id.* ¶ 7). Subsequent to the purchase, Kemper/Prime learned of the existence of extensive contamination of the Site. (*Id.* ¶¶ 23, 26). The Site must now be remediated, with considerable cleanup costs. Kemper/Prime has brought this cause of action to recover the cleanup costs that they have, and will incur.[1]

---

[1] In *Enter. Ctr. VII, L.P., et al. v. USX Corp., et al.*, No. 96 CV 5283 (N.D. Ill. 1999), Kemper/Prime filed suit against alleged polluters of the Site. The matter settled, and consequently, plaintiffs have agreed to defend and indemnify MWA's third-party claims against USX, which comprise Counts III and V.

2

After plaintiffs filed suit, MWA sought summary judgment, largely on the basis of a Professional Services Agreement ("PSA") purportedly entered into December 12, 1989 between MWA and third-party defendant the Prime Group. (Third-Party Pl.'s Opp'n Mot. Dismiss at 2). The Prime Group denies having entered into this agreement. (Am. Compl. ¶ 11). In fact, the plaintiffs claim that the only agreement entered into was the February 1990 contract between the Prime Group, Kemper/Prime's then managing general partner, and MWA, for a Phase I and II Environmental Assessment. (*Id.* ¶¶ 16, 20).

The contract language at issue, in the alleged PSA, paragraphs 16 and 17 state:

16. Paragraph 9 of the Agreement provides "...the Client [Prime Group] shall be solely responsible to third parties for damages arising as a result of Warzyn's [MWA] performance or nonperformance of any Services [and] the Client [Prime Group] shall indemnify, defend and hold harmless Warzyn [MWA] from all costs arising out of or connected with third party claims..."

17. Paragraph 10(b) of the Agreement provides "...the Client [Prime Group] agrees to waive any claim against Warzyn [MWA] and to indemnify, defend and hold harmless Warzyn {MWA] from and against any and all claims or liability for injury or loss allegedly arising from errors, omissions or inaccuracies in existing information provided to Warzyn [MWA] by Client [Prime Group] or others."

On September 30, 1998, Judge Williams denied MWA's motion for summary judgment, finding that there was a genuine issue of material fact as to whether MWA owed any duty to Kemper/Prime, that there is was also a genuine issue of material fact as to whether the PSA applied to MWA's work at the Site, and that the PSA did not restrict Kemper/Prime from bringing suit against MWA. *Kemper/Prime v. Montgomery Watson Americas, Inc.*, No. 97 C 4278, 1998 WL 704049, *9-10 (N.D. Ill. 1998).

Subsequent efforts to settle this matter were unsuccessful. (Third-Party Pl.'s Opp'n Mot. Dismiss at 3). In April 1999, the Johnson & Bell law firm substituted-in as MWA's counsel. (*Id.*). In July 1999, the first amended complaint was filed. (*Id.*). MWA answered the first amended complaint and brought a counterclaim against Kemper/Prime pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). (*Id.*). MWA filed a second counterclaim against Kemper/Prime pursuant to the Resource Conservation and Recovery Act of 1976 ("RCRA"). (*Id.*). Kemper/Prime answered both complaints. (*Id.*).

On November 4, 1999, MWA filed a five-count third-party complaint. Count I is a contractual indemnification claim brought solely against the Prime Group. Counts II through V are brought against a number of third-party defendants ("Prime Entities"). The Prime Entities, joined by Kemper/Prime, have brought a motion to dismiss all counts of MWA's third-party complaint.

## DISCUSSION

Count I, brought solely against the Prime Group, is based upon a claim of contractual indemnification. Counts II and III are brought pursuant to the Resource Conservation and Recovery Act ("RCRA") against the Prime Entities. 42 U.S.C. § 6972(a). Count IV and V, as against the Prime Entities, are brought pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). 42 U.S.C. § 9607(a). As Counts II through V are attacked as lacking jurisdictional requisites, those Counts will be addressed prior to Count I. The first issue raised by the Prime Entities is whether Counts II through V were properly impleaded.

4

# **IMPLEADER**

The Prime Entities contend that Counts II through V should be dismissed pursuant to Fed. R. Civ. Proc. Rule 14(a) because they were improperly impleaded. Rule 14, in pertinent part, states: At any time after commencement of the action of a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. *Id.*

Impleader is proper in the case at bar only if MWA shows that the Prime Entities' liability arises from the same dispute or nucleus of operative facts as the underlying cause of action. *Hartford Acc. & Indem. Co. v. Sullivan*, 846 F.2d 377, 381 (7th Cir. 1998). In addition, MWA must establish that the third-party defendant is or may be "secondarily liable" to MWA in the event MWA is found liable to Kemper/Prime. *See Design/Craft Fabric Corp. v. Lit-Pac, Inc.*, No. 89 C 2037, 1989 WL 106681, *1 (N.D. Ill. 1989).

The foundation of the Prime Entities' argument is that all third party defendants were improperly impleaded because MWA's claims did not arise from the same nucleus of common facts as the underlying negligent misrepresentation suit. Alternatively, if the Court finds that the claims did arise from the same nucleus of common facts, the Prime Entities state that MWA cannot establish secondary liability.

Regarding the "nucleus of common fact" requirement, the Prime Entities maintain that the dispute that gave rise to Kemper/Prime's negligent misrepresentation claim was MWA's failure to adhere to the standard of care for professionals within their industry when it negligently misrepresented the unavailability of Sanborn maps for the 13535 South

5

Torrence avenue site and its failure to adhere to the standard of care within the industry in its investigation of plaintiffs' property. The Prime Entities suggest that, conversely, the dispute that gave rise to MWA's RCRC and CERCLA claims are the response costs incurred by MWA and the failure of USX and Kemper/Prime to comply with RCRA regulations. (*Id.* at 4-5). This "distinction" is the basis for the Prime Entities stating that "[c]learly, these disputes differ and are independent of each other." (*Id.* at 5). The Court finds this argument unpersuasive.

The underlying negligent misrepresentation claim against MWA arose as a result of Kemper/Prime incurring millions of dollars in current and future costs from the necessary remediation of the Site. Similarly, MWA's claims against the Prime Entities arose as a result of the costs of remediating the Site are in defense of the services MWA performed in evaluating the site. Consequently, there is a factual connection between the underlying claim and the third-party plaintiffs' claims.

In *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321 (7th Cir. 1994), the Court found that the issue of CERCLA liability and the interpretation of an indemnification agreement between the parties liable for the clean-up are "inextricably related." "Of particular importance is the reality that statutory liability under CERCLA endures even if contractual liability is later determined to be non-existent." *GNB Battery Tech., Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir. 1995). Like *Kerr*-McGee, the issue of indemnification and the question of CERCLA liability in this case are inextricably related. Having found the requisite factual connection, the Court must examine the secondary liability argument set forth in the motion to dismiss.

The cases from this jurisdiction dealing with this issue are not factually analogous. MWA cites *LaSalle Trust v. Schaffner*, 818 F. Supp. 1161 (N.D. Ill. 1993), in support of their position that all claims were properly impleaded. In *LaSalle*, the Court approved the defendants in a CERCLA suit filing a third-party complaint against their insurers. 818 F.Supp. at 1164. The Prime Entities, on the other hand, rely on *Forum Ins. Co. v. Ranger Ins. Co.*, 711 F.Supp. 909 (N.D. Ill. 1989). In *Forum*, the plaintiff filed a declaratory judgment action against the defendant, seeking a declaration that the defendant was required to defend a mutual insured. 711 F.Supp. at 910. The defendant then filed a third-party complaint against the insured seeking a declaration that it had no duty to defend. *Id.* The Court found that the third-party claim was improperly impleaded because the insured, "[I]n no way could be liable for any of the [defendant's] liability . . ." *Id.* at 915. Neither of these cases, in that both concerned insurer liability, are particularly instructive in determining the secondary liability issue.

MWA claims that secondary liability exists because, "If MWA is found liable to pay plaintiffs for the clean-up of the environmental contamination, then those polluters and others statutorily responsible for the contamination at the Site are derivatively liable to MWA for damages." (Reply Opp'n Mot. Dismiss at 18). MWA cites *Leaseway v. Carlton*, 568 F. Supp. 1041 (N.D. Ill. 1983), to support its stance on the existence of secondary liability. In *Leaseway*, the Court found that impleader was proper because the third-party defendant "may be liable [to the third-party plaintiff] for damages to the extent necessary to put [the third-party plaintiff] in the position he would have been in" absent the poor workmanship of the third-party defendant. 568 F. Supp. at 1044.

7

MWA's argument regarding secondary liability is confusing because they do not set forth facts supporting their position in their memorandum. However, MWA set forth a number of facts in its complaint, which allege that the Prime Entities' own negligence; in not immediately cleaning up the property and in performing improper trenching operations, exacerbated the contamination at the Site. (Compl. ¶¶ 37-40). On this basis, secondary liability could be established.

Kemper/Prime and the Prime Entities state that even if the claims arise from the same nucleus of operative fact and secondarily liability does exist, Counts II through V should not have been impleaded because Kemper/Prime is prejudiced by the impleaded claims, that confusion of the jury is possible, the litigation will be prolonged and the case will be increased in complexity. (Reply Supp. Mot. Dismiss at 5-6). Considering the scope of the underlying cause of action and the fact that the CERCLA and RCRA claims are not to be tried before a jury, these concerns are not meritorious.

"The purposes of Rule 14 are to avoid circuitry of action and multiplicity of suits, to prevent the necessity of trying several related claims to be disposed of in one action, thereby simplifying and expediting litigation, eliminating unnecessary expense and saving the time of the courts." *Leaseway*, 568 F. Supp. at 1043, *citing Colton v. Swain*, 527 F.2d 296, 299 (7th Cir. 1975). For the reasons stated above, Counts II through V were properly impleaded.

## SUBJECT MATTER JURISDICTION

The Prime Entities, relying on *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155 (7th Cir. 1988), state that Counts II and IV should be dismissed pursuant to Rule 12(b)(1) because MWA has not established subject matter jurisdiction over these claims. (Reply Supp. Mot. Dismiss at 8). The third-party defendants also claim that

8

"[s]ubject matter jurisdiction is lacking over Counts II and III because [the Prime Entities] have never owned or operated the Site." (*Id.* at 7).

The Prime Entities, invoking Rule 10(c), ask the Court to base a finding of a lack of subject matter jurisdiction on two affidavits of corporate officers who state that the Prime Entities have never been an "owner or operator" of the site. (Mot. Dismiss, Exhibits C and D). MWA counters the Prime Entities' position maintaining that they "incorrectly assert that whether they are owner/operators is determinative of not just whether MWA states a claim against them, but is determinative of whether this court has the power to adjudicate MWA's claim . . .." (Opp'n Mot. Dismiss at 23).

MWA characterizes the Prime Entities' affidavits as "self-serving." (*Id.*). MWA furthers takes issue with the fact that the Prime Entities seem to be attempting a veiled Rule 12(b)(6) motion, calling it "an indirect attack on the merits," and consequently inviting the Court to treat the motion before it as such, citing *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992). (*Id.* at 25, n.6.). However, this procedure "is a hazardous one that warrants special caution," *Peckmann*, 966 F.2d at 297, and one that this Court need not undertake.

This Court's subject matter jurisdiction over the RCRA counts, for purposes of this motion to dismiss, is in no way dependent upon a positive factual showing that the third-party defendants are an "owner or operator." RCRA, allows "any person" to bring a civil action on their own behalf "against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order . . .." 42 U.S.C. § 6972(a)(1)(A). It is true that a party cannot be liable under RCRA unless it "has contributed to or is contributing to handling, storage, treatment, transportation or disposal."

9

42 U.S.C. § 6972(a)(1)(B). However, liability is not to be determined upon this motion to dismiss, it is enough that MWA has alleged that the Prime Entities fall within the category of those potentially liable.

Furthermore, this Court's subject matter jurisdiction over the CERCLA claims, is in no way dependent upon clear proof that the defendant is in actuality an "owner or operator." MWA accurately asserts that *Hines Lumber* does not stand for the proposition that proof of a defendant's "owner or operator" status constitutes a requisite for this Court's subject matter jurisdiction over CERCLA claims. *Hines Lumber* held that a supplier of wood preserving chemicals was not liable to a lumber company for remediation expenses. 861 F.2d at 157-58. The Court in *Hines Lumber* made a factual determination that the defendants were not an "owner or operator," and accordingly ruled upon the merits of the case. *Id.*

Similarly, in this case, the resolution of whether the Prime Entities are an "owner or operator" requires determinations of fact. This Court is prohibited from making such determinations at this stage. In any event, MWA alleges that the third-party defendants are the general partners of the limited partnership owners of the Site. (Opp'n Mot. Dismiss at 28). MWA also claims that third-party defendant Prime Group Realty Trust, in filings made with the United States Securities and Exchange Commission, stated that it owns the Site, and acknowledged potential liability for the environmental condition. (*Id.* at 28-29). Further, MWA asserts that one of the affiants who claims that the Prime Entities are not an "owner or operator," Mr. Shultz, testified in a recent deposition that Prime Group Realty Trust is responsible for remediation of the Site. (*Id.* at 29).

For the reasons stated above, the motion to dismiss on the basis of a lack of subject matter jurisdiction is hereby denied without prejudice. It is now necessary to address the Prime Entities continued attack on the sufficiency of Counts II and III, specifically their argument that Article III standing is not present for these claims.

## ARTICLE III STANDING

To satisfy Article III's standing requirements, a plaintiff must show (1) "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) causation, that is, that the injury is fairly traceable to the defendant's conduct; and (3) redressability, which means that it is likely and not merely speculative that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). The relevant showing for Article III standing is not injury to the environment, but injury to the plaintiff. *Friends of the Earth v. Laidlaw*, 120 S. Ct. 693, 704 (2000).

The Prime Entities maintain that the RCRA claims, Counts II and III, must fail because MWA's standing is lacking as a result of the absence of an injury in fact. (Reply Supp. Mot. Dismiss at 9). In addition, the Prime Entities claim that the relief sought under RCRA, an injunction, will not redress any possible injury MWA may suffer because Kemper/Prime has already agreed to clean up the Site. (*Id.* at 10-11). The second element of Article III standing, causation, is not addressed by the Prime Entities.

MWA states that "the harm and threat of harm . . . is plaintiff's lawsuit against MWA, which already has caused MWA to incur investigative and expert consulting costs . . . ." (Opp'n Mot. Dismiss at 27). As for redressability, MWA claims, if the Prime Entities are ordered by this court to remediate the Site, MWA's exposure for the clean-up

11

will be greatly reduced, if not eliminated. (*Id.*). MWA also stresses that no action as yet has been taken to remediate the Site. (*Id.*). Further, MWA suggests that civil penalties, as prayed for under RCRA, afford redress.

MWA's injury in fact, the underlying suit and associated expenses already incurred, is concrete and particularized and actual or imminent, not conjectural or hypothetical. Additionally, the RCRA citizen suit penalties prayed for apparently would redress the alleged injury in fact. *See Laidlaw*, 120 S.Ct. at 706 (finding that the Clean Water Act citizen suit civil penalties provide redressability). Although the defendants insist that they cannot access the Site, the purported partnership relationship between Kemper/Prime and the Prime Entities rebuts this contention and raises a factual issue. Having decided that Counts II through V survive this motion to dismiss, and having disposed of all jurisdictional issues, Count I will now be addressed.

## COUNT I

The Prime Entities move to dismiss Count I pursuant to Rule 12(b)(6). The Court, in considering a 12(b)(6) motion, accepts all well-pleaded allegations as true. *See Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). Therefore, a motion to dismiss should only be granted if it appears beyond a reasonable doubt that the non-movant can prove no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Significantly, a Rule 12(b)(6) motion to dismiss "concerns the sufficiency of the complaint, not the merits of the suit." *Village of Villa Park v. Parent Petroleum*, No. 95 C 4053, 1996 WL 189283, *2 (N.D. Ill. 1996).

Third-party defendants invoke Rule 10(c), attaching Exhibits to both memoranda submitted to this Court. Fed. R. Civ. P. 10(c). Third-party plaintiffs have no quarrel with

the inclusion of Work Order No. 1 and the PSA, however, all other exhibits are purportedly "plainly improper under Rule 10(c), and should be excluded . . . ." (Opp'n Mot. Dismiss at 5). The Prime Entities insist their attachments fall within the rule at issue, which is: "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Levenstein v. Salafsy*, 164 F.3d 345, 347 (7th Cir. 1998).

The resolution of the argument concerning the inclusion of the disputed exhibits is irrelevant because, once again the parties are asking this Court to make findings of fact based on the pleadings. These findings are more appropriately suited for a dispositive motion later on in the proceedings.

The third-party defendants argue that MWA is impermissibly seeking indemnification for its own negligence in connection with services performed under a construction contract because the Illinois Construction Contract Indemnification for Negligence Act, 740 ILCS 35/1 as well as the Supreme Court's decision in *Westinghouse Elec. Elevator Co. v. LaSalle Monroe Bldg. Corp.*, 395 Ill. 429 (1946), bar Count I of MWA's complaint.

The Prime Entities declare that the indemnity provisions in the PSA violate the Illinois Construction Contract Indemnification for Negligence Act ("the Act"), based upon the assertion that MWA's work under the contract, specifically the installation of groundwater wells, was "construction . . . of a . . . structure." 740 ILCS 35/1, *et seq.*[2]

---

[2] MWA initially pleaded the Act's statute of limitations as an affirmative defense. (Opp'n Mot. Dismiss at 9-10). The Prime Entities characterized this as an admission that the contract performed was in fact for construction as opposed to services. Clearly, a

13

The Prime Entities then refer to the Illinois Water Well Construction Code's definition of "construction" as "all acts necessary to obtaining groundwater by any method, including without limitation the location of and the excavation of the well" to support their position. 415 ILCS 30/3(a). MWA disagrees, relying on *Tribune Co. v. Geraghty & Miller*, No. 97 C 1889, 1997 WL 438836 (N.D. Ill. 1997), and stressing that the word "construction" does not appear in the PSA heading, however, the word "Services" is within the heading.

The Prime Entities alternatively argue that the indemnity language within the PSA does not clearly and explicitly evidence the intention to indemnify MWA in the event of their own negligence, as required by *Westinghouse*, 395 Ill. at 433. MWA insists that the pertinent provisions are in fact indemnification clauses as opposed to exculpatory clauses, and therefore, less stringent rules regarding whether the language is clear and explicit apply. (Opp'n Mot. Dismiss at 11). The Prime Entities in conclusion, urge the Court to find the provisions at issue to be void as against public policy. Their reasoning basically is that negligence should not be rewarded and instead the exercise of care in the execution of construction contracts should be promoted.

All of the arguments concerning Count I necessarily ask this Court to construe the contractual language in the PSA and apply it to the facts of the case. As previously discussed, the matter before the Court is a motion to dismiss. The Court's inquiry at this stage is limited to a finding of whether or not the complaint is sufficient. The complaint is sufficient to survive this motion to dismiss. Count I of MWA's third party complaint

---

party may plead an affirmative defense without such defense being considered an "admission." *See* Fed. R. Civ. P. 8(e)(2).

survives this motion to dismiss. Paragraphs 9 and 10 of the PSA set forth indemnity language that may or may not protect MWA. This may depend upon a factual determination as to the intent of the parties at the time of the making of the contract. For now, it would be inappropriate for this Court to conclude that MWA has set forth no facts to support its claim to indemnity. Therefore, the motion to dismiss Count I is hereby denied without prejudice.

## CONCLUSION

For the reasons set forth above the motion to dismiss MWA's third party complaint is denied. (#66-1).

**SO ORDERED**                ENTERED: 6/23/00

HON. RONALD A. GUZMAN
**United States Judge**

15