# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 4278 | **DATE** | 3/31/2004 |
| **CASE TITLE** | KEMPER/PRIME INDUSTRIAL PARTNERS vs. MONTGOMERY WATSON AMERICAS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff is barred from presenting evidence on the issue of damages, and this case is dismissed with prejudice. All pending motions are dismissed as moot. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 3 1 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 276 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| CG courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEMPER/PRIME INDUSTRIAL PARTNERS,

Plaintiff,

v.

MONTGOMERY WATSON AMERICAS, INC.,

Defendant.

97 C 4278

Judge Ronald A. Guzmán

## MEMORANDUM OPINION AND ORDER

In its September 23, 2003 Memorandum Opinion and Order denying Defendant Montgomery Watson Americas, Inc.'s First and Second Motions in Limine, this Court expressed serious doubts about the ability of Plaintiff Kemper/Prime Industrial Partners to provide evidence of damages, without which the Court would not submit the issue to the trier of fact. In response, Plaintiff filed a Memorandum Of Evidence On Damages That It Will Present At Trial ("Pl.'s Mem."), and Defendant filed a responsive brief. For the reasons that follow, the Court finds that Plaintiff cannot offer proof of all necessary parameters of the damages calculation, and Plaintiff is barred from presenting evidence of damages at trial. The case is therefore dismissed with prejudice.

## BACKGROUND

The Court presumes familiarity with the underlying facts and lengthy procedural history of this case. In brief, at Plaintiff's request, Defendant's predecessor performed a series of investigations and issued several preliminary and final reports (collectively the "1990 Report") about the nature and

276

extent of the environmental contamination of a piece of industrial property (the "Property") that Plaintiff sought to purchase. After the 1990 Report was issued, Plaintiff did purchase the Property and now sues Defendant for negligent misrepresentation due to its alleged failure to report the entire cost of remediating the contamination.

On September 23, 2003, this Court entered a Memorandum Opinion and Order ("9/23/03 Order") in which it denied Defendant's First Motion in Limine to bar all evidence of Plaintiff's cost of remediation and Defendant's Second Motion in Limine seeking to bar the testimony of Plaintiff's damages expert. Defendant's First Motion in Limine essentially argued that the proper measure of damages in this case is the diminution in value of the land and that Plaintiff had no damages under this formulation. In the 9/23/03 Order, the Court agreed with Plaintiff that the proper measure of damages in this case was instead based on Section 552B of the *Restatement of Torts (2d)*, which describes "Damages for Negligent Misrepresentation."

The Court concluded that under the *Restatement* formulation, "plaintiff is entitled to recover only the extra cost of remediation incurred as a result of cleaning up that pollution which the defendant negligently failed to include in its report to the plaintiff."[1] (9/23/03 Order at 3.) Thus, to calculate its damages, Plaintiff must offer evidence of (1) the cost of remediating the contamination listed in the 1990 Report, and (2) the total cost of remediating the contamination that existed on the Property at the time of the 1990 Report. If Defendant were liable for negligent misrepresentation, the second figure should be greater than the first, and the difference would represent Plaintiff's damages.

---

[1] The Court held that Plaintiff would also be entitled to the difference in the value of the land received and the purchase price paid for it. (9/23/03 Order at 3.) However, Plaintiff apparently does not claim these damages, nor has it attempted to calculate them if they exist.

While the Court agreed with Plaintiff's assertion of the appropriate measure of damages, it did not agree that the proper measure of damages was the full cost of remediating the property to a Tier One level, which was estimated by Plaintiff's expert Laszewski to be between $24 million and $31 million, less a remediation estimate given by Defendant of $300,000. Based on its knowledge of Plaintiff's evidence at the time of the 9/23/03 Order, the Court expressed its concern that Plaintiff did not have sufficient evidence of both parameters of damages that would allow Plaintiff's actual damages to be calculated to any reasonable degree of certainty. (9/23/03 Order at 4-5, 10.) Specifically, the Court questioned whether Plaintiff could present evidence of the cost of remediating the contamination disclosed in the 1990 Report. (*Id.* at 5.) The Court noted that Plaintiff had offered no expert opinion as to this calculation, "and it is clearly too late to do so now." (*Id.*) The Court strongly emphasized that without such evidence, the issue of damages could not be presented to a jury. (*Id.* at 5, 10.) The Court then allowed Plaintiff to submit a memorandum describing the specific evidence on damages it intended to present at trial in order to address the issues raised in the 9/23/03 Order, and Defendant filed a response to Plaintiff's memorandum.

After reviewing the parties' submissions, the Court concludes that its previous concerns have not been adequately addressed by Plaintiff, which offers no evidence by which a factfinder could reasonably calculate damages to any degree of certainty, or indeed that Plaintiff suffered damages at all.

3

## DISCUSSION

Plaintiff "has the burden of proving damages to a reasonable degree of certainty." *Telemark Dev't Group, Inc. v. Mengelt*, 313 F.3d 972, 983 (7th Cir. 2002); *see also Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) ("For years we have been saying, without much visible effect, that people who want damages have to prove them . . . ."). An award of damages cannot be based on conjecture or speculation. *Telemark*, 313 F.3d at 983.

1.   **Remediation Costs in 1990 Report**

One necessary parameter of Plaintiff's damages is the cost of remediating the contamination that was described in the 1990 Report. That figure must be deducted from the actual cost of remediating the Property as it existed in 1990 in order to calculate Plaintiff's damages. "Clearly, some remediation would have been necessary even if the pollution were no more than what was described in defendant's allegedly negligent 1990 report. Only the difference between that cost and the full remediation cost plaintiff now claims is properly recoverable." (9/23/03 Order at 4.)

Plaintiff argues that the only remediation cost reflected in the 1990 Report is a remediation estimate of approximately $300,000 that Defendant gave Plaintiff in May 1990. (Pl.'s Mem. at 5.) Plaintiff refers to a three-page letter from Defendant dated May 31, 1990 summarizing a meeting between the parties in which they discussed "[a]reas of concern and additional investigation techniques." (Pl.'s Ex. J, at M62.) The letter estimates $300,000 to remediate a zone within the Property that was identified as "[t]he major area of concern." (Pl.'s Ex. J, at M64.) Plaintiff identifies no remediation cost estimates in either of Defendant's comprehensive reports issued in June 1990, the Environmental Assessment Report (Pl.'s Ex. M) and the Subsurface Investigation

4

Report (Pl.'s Ex. N), and Plaintiff in fact avers that "none of Defendant's reports quantified the potential liabilities or remediation costs for the Property." (Pl.'s Mem. at 5.)

Plaintiff argues that "Defendant failed to quantify the contamination for locations where it found contamination as well as, obviously, for locations where it completely missed contamination." (Id. at 6.) Therefore, according to Plaintiff, the only remediation cost included in the 1990 Report was the $300,000 estimate listed in the May 31, 1990 letter. Plaintiff states that Jim Martell, The Prime Group, Inc.'s Senior Vice President and the person who retained Defendant's services, "reasonably believed that there were no remediation costs associated with the contamination on the Property other than the [$300,000] estimate . . . ." (Id. at 8.) On its face, however, the estimate relates to only a certain portion of the identified contamination.[2] A jury could reasonably find that Defendant's June 1990 reports, which comprise over fifty pages, not including attachments, and describe numerous areas of contamination in addition to the "major area of concern" discussed in the May 31, 1990 letter, sufficiently disclosed the need for remediation costs above and beyond the $300,000 figure, even if those costs were not expressly quantified. But a jury that did so find would be wholly unable to determine the value of those additional reported remediation costs given the evidence Plaintiff will present at trial.

Although Plaintiff does not waver from its contention that this parameter is capped at $300,000, Plaintiff also submits the report of its liability expert, Gary Vajda, who opined that the maximum potential liability that Defendant should have reported to Plaintiff, based on Defendant's work product, was $6,600,000. (Pl.'s Ex. AA at 19.) Arguably, this figure could be used to

---

[2] Notably, Gary Vajda, Plaintiff's liability expert, also states that the $300,000 cost estimate addressed "only" certain areas of concern. (Pl.'s Ex. AA at 18.)

5

represent the cost of remediating all the contamination disclosed in the 1990 Report. Defendant responds first that under this district's Local Rules, only one expert may testify on each subject unless there is good cause shown, and Plaintiff already has a damages expert. The Court need not reach the issue of whether Vajda's testimony would be allowed under the Local Rules, however, because the Court agrees with Defendant's second argument, that Vajda's opinion on the maximum potential liability was purely speculative. Vajda testified that the liability values were a "guesstimate" (Def.'s Ex. 13, Vajda Dep. at 455:14, 456:12, 456:16), that he did not know what cleanup standard was used in calculating the values (*id.* at 453:8-10, 476:7-8), and that "it's not meant to be to that degree of accuracy" (*id.* at 453:9-10). Vajda's calculation is admittedly based on conjecture and speculation and cannot form the basis of a damage award. *See Telemark*, 313 F.3d at 983; *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 672 N.E.2d 341, 348 (Ill. App. Ct. 1996). Plaintiff therefore has not offered any evidence from which a trier of fact could determine the first parameter of the damages calculation to any reasonable degree of certainty.

### 2. Full Cost of Remediation in 1990

To prove the second parameter of the damages calculation, the actual cost of remediating the Property as it stood in 1990, Plaintiff offers the testimony of its expert, Steve Laszewski, who would testify to the following:

> Laszewski calculated the cost to remediate the Property to a Tier One standard. He will testify about his background and experience to perform such a calculation, the information upon which he relied to calculate that cost, the methodology employed to calculate that cost and that the cost to remeidate [sic] the contamination on the Property is $24-31 million.

(Pl.'s Mem. at 11.)

Plaintiff's evidence of the total cost of remediation in 1990 is fatally flawed for a number of reasons. First, it is not disputed that a certain amount of contamination to the Property, which is zoned for industrial use, occurred after Defendant's 1990 Report, and in fact Plaintiff has sued a tenant for lead contamination that allegedly occurred after 1990. Clearly Defendant would not be liable for failing to report contamination that did not exist in 1990. However, Plaintiff's damages expert makes no attempt to quantify or distinguish the contamination that existed in 1990 from subsequent contamination. Therefore, a jury could not possibly determine from Plaintiff's evidence the cost of remediating the property as it existed in 1990. Plaintiff's failure to offer any evidence in discovery of the measure of later contamination is particularly troubling given that a certain amount of that contamination is the subject of pending litigation, and Plaintiff should have ready access to the value of at least that contamination.

Second, Plaintiff's expert offers only an estimate of remediating the Property to a Tier One level, a high degree of remediation. A jury, however, could find that damages for Tier One remediation may not be appropriate for the Property, which has been put to industrial use for over a hundred years and will continue that use for the foreseeable future. Plaintiff's proffered evidence, however, gives no guidance whatsoever for calculating the cost of a lesser standard of remediation. For reasons known only to Plaintiff, it asked Laszewski to prepare a report based only on a Tier One calculation, not Tier Two or Tier Three. (Def.'s Ex. 12 at 51-52.)

Morever, even if this Court were to assume that Tier One is the proper standard of remediation, Plaintiff's evidence would still not be sufficient to prove its damages. The Tier One remediation figure would only be useful if the other relevant calculations were expressed in Tier One terms as well. The cost of remediating the contamination listed in the 1990 Report and the post-1990

7

contamination would have to be calculated to a Tier One level so that accurate deductions could be made. But Plaintiff has presented no evidence that would allow a trier of fact to make a Tier One to Tier One comparison.

Finally, Plaintiff goes to great lengths to explain that it may be liable for clean-up costs associated with portions of the Property now owned by subsequent purchasers, whose claims the Court previously dismissed with prejudice because Defendant owed them no duty. Plaintiff has offered no case law that would allow it to recover damages for mere potential liability to third parties. And not surprisingly, Plaintiff's expert did not allocate the costs of remediation between the parcels of the Property owned by Plaintiff and those sold to subsequent owners. Therefore, if a factfinder were to disagree with Plaintiff's theory, it could not determine the proper measure of damages for Plaintiff's share of the Property alone. In any event, the Court need not reach the issue of whether Plaintiff actually is liable to pay for remediation of parcels sold to others because Plaintiff has not offered evidence of damages under its own theory that it is liable for the cost of remediating the whole Property.

### 3. Discovery Sanctions

Federal Rule of Civil Procedure ("Rule") 26(a)(1)C) requires the disclosure, without awaiting a discovery request, of "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying . . . the documents or other evidentiary material . . . on which such computation is based, including materials bearing on the nature and extent of injuries suffered."

Rule 37(c) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as

evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." Other appropriate sanctions include those authorized by Rule 37(b)(2)(B), which provides that a court may "refus[e] to allow the disobedient party to support or oppose designated claims or defenses, or prohibit[] that party from introducing designated matters in evidence," and Rule 37(b)(2)(C), which authorizes a court to dismiss the action.

As discussed above, the Court finds that Plaintiff has failed to produce any evidence in discovery that would allow a trier of fact to determine the existence or extent of its damages. Plaintiff is therefore barred from presenting evidence of its damages at trial pursuant to Rule 37(b)(2)(B). *See G.D. Searle & Co. v. Philips-Miller & Assocs., Inc.*, No. 92 C 3377, 1994 WL 274943, at *2 (N.D. Ill. June 16, 1994). The Court has considered at length whether a lesser penalty would suffice in this case. However, it is clear that no other sanction would avoid the clear prejudice to Defendant caused by Plaintiff's utter failure of proof.[3]

Obviously, Plaintiff was interested in presenting the best possible damages claim, and to that end, it produced only evidence that maximized the parameter of total remediation costs and minimized the parameter of remediation costs disclosed in the 1990 Report. The problem with Plaintiff's strategy is that the proffered evidence would not allow a trier of fact to determine the issue of damages even if Plaintiff were successful in proving every other element of its claim. Plaintiff

---

[3] The Court also notes that Plaintiff's evidence of damages likely would not be admissible at trial because the probative value of that evidence is unquestionably "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403.

9

could not have been surprised by the standard of damages in this case, given that the Court agreed with Plaintiff that the *Restatement* applies, but it did not present evidence relevant to that standard. Plaintiff knew that subsequent contamination occurred on the Property, and indeed is probably aware of the value of at least a portion of that contamination, yet it failed to offer evidence in discovery of that value. Plaintiff could have asked its expert to calculate cost of remediation to a standard other than Tier One, or to assess the other damages parameters in Tier One terms, or to determine the total cost of remediating all of the contamination disclosed in the 1990 Reports, but it strategically chose not to do so.

Plaintiff has the burden to prove damages, a necessary element of its claim of negligent misrepresentation. *See Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989). Because Plaintiff cannot offer any evidence of damages at trial, its claim must be dismissed with prejudice. *See G.D. Searle*, 1994 WL 274943, at *2; *Kapco Mfg. Co. v. C & O Enters., Inc.*, No. 84 C 10129, 1986 WL 13753, at *19 (N.D. Ill. Dec. 1, 1986).

## CONCLUSION

For the foregoing reasons, Plaintiff is barred from presenting evidence on the issue of damages, and this case is dismissed with prejudice. All other pending motions are dismissed as moot. This is a final and appealable order.

3/31/04

SO ORDERED.  ENTERED: 

HON. RONALD A. GUZMAN
United States Judge