IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEMPER PRIME INDUSTRIAL PARTNERS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MONTGOMERY WATSON ) <br> AMERICAS, INC., ) <br> ) <br> Defendant. ) <br> ) <br> MONTGOMERY WATSON ) <br> AMERICAS, INC., ) <br> ) <br> Third-party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE PRIME GROUP, INC., ) <br> ) <br> Third-party Defendant. ) | No. 97 C 4278 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

The case is before the Court on the parties motions in limine. For the reason set forth below, MWA's renewed motion in limine is granted in part and denied in part, and Prime's motions in limine are denied.

**MWA's Motions**

MWA asks the Court to exclude pursuant to Federal Rule of Evidence 403 any evidence that suggests Kemper Prime existed before June 22, 1990. MWA's argument is grounded in Prime's

admission, during summary judgment proceedings, that "Kemper/Prime Industrial Partners is an Illinois general partnership formed on or about June 22, 1990." (*See* Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 7 [doc. no. 202].)

A partnership, under Illinois law, is "the association of 2 or more persons to carry on as co-owners a business for profit." 805 Ill. Comp. Stat. 206/202. A partnership agreement need not be in writing. 805 Ill. Comp. Stat. 206/101(g). Rather, such an agreement and any amendments to it, can be "written, oral, or implied." *Id.*; *see Borys v. Rudd*, 566 N.E.2d 310, 314 (Ill. App. Ct. 1990) (stating that partners had first "enter[ed] into an oral partnership agreement" and then "entered into a written agreement regarding certain rights and obligations of the partners in the partnership venture"). "Whether a partnership exists is a question to be determined by the fact finder from all the facts and circumstances presented." *Argianas v. Chestler*, 631 N.E.2d 1359, 1369 (Ill. App. Ct. 1994).

Given the legal context, it is not clear whether Prime's admission means that Kemper Prime did not exist in any fashion, however informal, before June 22, 1990 or that a written partnership agreement did not exist until that date. Consequently, MWA's motion to exclude evidence that Kemper Prime existed in some form and, thus, was capable of acting as a principal before June 22, 1990 is denied.

MWA also contends that evidence of Prime's subjective intent with respect to the PSA and work orders should be barred. This time the Court agrees. As the Seventh Circuit has said:

> Judges often speak of contracts as expressing the "intent" of the parties and even employ the metaphor of the "meeting of the minds." That metaphor cannot be taken literally, and the reference to "intent" does not invite the court to tour the parties' minds. "Intent" is a shorthand for the congeries of signs and symbols that the parties exchange. The theory of contract is in the end objective.

2

*Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 355 (7th Cir. 1995) (citations omitted). Prime may not, therefore, offer any evidence of its unexpressed intent.

**Prime's Motions**

Prime's first request is that the Court bar MWA representatives from testifying that Jim Martell reduced the scope of the initial work to be performed by Warzyn because none of those representatives "had a conversation with . . . Martell" in which he did so. (Third-Party Def.'s Am. Second Mot. Limine at 1.) As an initial matter, it is not clear how Martell's alleged decisions with respect to the initial scope of work are relevant to the issues remaining in this suit. To the extent they are, however, Martell's failure to tell any MWA representative that he was reducing or had reduced the scope of work does not mean that he made no such decision. If MWA representatives have personal knowledge of words or actions that suggest Martell reduced the scope of work, they can testify about those words or actions, if they are otherwise admissible, to support the inference that the reduction occurred.

Next, Prime asks the Court to exclude the PSA from evidence because Warzyn never told Martell that the PSA "would apply to all projects for . . . Prime." (Third-Party Def.'s Am. Sixth Mot. Limine at 1.) In other words, Prime contends that the only conclusion that can be drawn from Warzyn's alleged omission is that the PSA did not apply to this project. The Court disagrees. Warzyn's alleged failure to tell Martell that the PSA would apply across the board may support the inference that the PSA did not apply here, but it certainly does not compel that conclusion. The alleged omission does not, therefore, provide a basis for excluding the PSA.

3

Prime also asks the Court to limit the evidence introduced to resolve the contractual ambiguity to "objective evidence [that is] supplied by 'disinterested third parties.'" (Third-Party Def.'s Am. Seventh Mot. Limine at 4 (quoting *Bourke v. Dun & Bradstreet*, 159 F.3d 1032, 1037 (7th Cir. 1998)).) Prime's argument is based on its belief that the ambiguity in this case is latent and a line of Seventh Circuit cases like *Bourke* that say only objective evidence is admissible to resolve a latent ambiguity. One of those cases is *Stone Container Corp. v. Hartford Steam Boiler Inspection & Insurance Co.*, which states:

> The distinction between the two types of ambiguity . . . is not peculiar to insurance law. A patent ambiguity in a contract is one that is apparent from just reading the contract. A latent ambiguity arises when, although the contract is clear "on its face," anyone knowing the background would know that it didn't mean what it seems to mean. *AM International, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572 (7th Cir. 1995) (Illinois law). A latent ambiguity thus requires extrinsic evidence to establish, as well as to resolve, and only objective evidence may be used for these purposes. *Id.* at 575.

165 F.3d 1157, 1162 (7th Cir. 1999).

Subsequently, however, the Seventh Circuit expressly rejected the notion espoused in *Stone Container* and *Bourke* that the kind of evidence admissible to resolve a contractual ambiguity depends on the nature of the ambiguity:

> [I]t is important to note that once a contract is found by the court to be patently or latently ambiguous, then . . . any evidence that would normally be admissible in a trial becomes admissible to show what the contract meant. This is more often assumed than articulated, but *Charter Oil* is a square holding, and we think it makes sense and therefore retract our contrary, and unreasoned, dictum in *Stone Container Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, *supra*, 165 F.3d at 1162. For, with the exception of the parol evidence rule (usually regarded, however, as a substantive rule of contract law rather than a rule of evidence), there are no special evidentiary rules for the trial of a breach of contract case. The rules concerning ambiguity are applied *before* trial, to see whether there is a triable issue. The rules function as gatekeepers, to prevent a disappointed contract party from ginning up a fishy story about what the contract really meant but didn't say. They are not rules of

4

evidence governing the admissibility of evidence offered at trial, once ambiguity is found.

*Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 546-47 (7th Cir. 2000) (citations omitted). Because the Seventh Circuit has explicitly rejected the evidentiary distinction Prime urges, Prime's motion to limit the evidence presented at trial to objective, third-party evidence is denied.

Prime's last group of requests concern evidence of insurance coverage for the claims in suit. Prime asks the Court to: (1) allow it to tell the jury that MWA's self-insured retention or primary coverage limits are sufficient to satisfy part or all of any judgment entered in this case; (2) bar MWA from presenting evidence that it notified insurance carriers other than those it disclosed in discovery of the claims for which it seeks indemnification; and (3) bar MWA from presenting evidence that there are any third-party claims that are not covered by insurance policies. Prime says this evidence should be permitted or barred because MWA stymied Prime's efforts to obtain discovery on the insurance coverage issue, and the absence of coverage is a condition precedent to Prime's indemnification obligation that MWA must prove. (*See* Third-Party Def.'s Am. Eighth Mot. Limine at 4; Third-Party Def.'s Am. Ninth Mot. Limine at 4; Third-Party Def.'s Am. Tenth Mot. Limine at 1-2.) The Court has previously ruled, however, that the existence of insurance coverage is an affirmative defense that Prime has waived. (*See* 1/20/07 Mem. Op. & Order at 3-5.) Thus, insurance coverage is no longer an issue for trial.

## Conclusion

For the reasons set forth above, MWA's renewed motion in limine [doc. no. 390] is granted in part and denied in part, and Prime's amended second, sixth, seventh, eighth, ninth and tenth motions in limine [doc. nos. 382-388] are denied.

**SO ORDERED.**  **ENTERED:**

JUN 0 8 2007

RONALD A. GUZMAN
**United States District Judge**